By the Court.—Sedgwick, Ch. J.
The plaintiff, under the lease, had the full right of election to grant the renewal for twenty-one years at a rent to be fixed under an appraisement of the value of the vacant lot, or to take possession of the premises upon paying the value of the house. In my judgment, that election was made and determined by proceeding to the appraisement of the value of the lot. One thing in particular influences me. The appraisement involved trouble and expense to the defendant. He had to find and to become liable to pay, an appraiser on his part. From the time the lessor laid upon the lessee any of the burdens of the covenant, the lessee had a right to enjoy its benefits.
As the case stands we have to be content with the finding of fact by the court, to the effect that the appraisement was made under the covenant for renewal.
The plaintiff makes as an objection to the appraisement, that the appraiser and the umpire took property *149 which, was not vacant property as their guide, in estimating the value of the premises. If the doing of such a thing contrary to the terms of the contract would legally invalidate the appraisement, the lease does not forbid it. The persons chosen were to value the lot “ considering the same as an unincumbered vacant lot.” This is not violated by enlightening the judgment, by a knowledge of the value of lots in the neighborhood, that had valueless buildings upon them.
It is argued that, in contravention of the lease, the umpire’s appraisement was not under oath. It is said that no form of oath was given on the paper and no venue was shown. It is, however, in the usual form of an affidavit, excepting that it begins New York, June 11, 1879. No scilicet appears, or to wit, or that is to say. As under no circumstances, could a falsehood in such a proceeding be a public offense, and the oath was only meant to bind strongly the conscience, it is not necessary to look at the matter technically. The paper sufficiently discloses that the oath was administered at New York city within the jurisdiction of the notary.
Again, it is said that the appraisement by the umpire did not show on its face that his valuation of the lot was such as it would be worth at private sale. He was the umpire. The appraisers had made individual valuations which they set forth under oath in writing. In each it appeared that the valuation as at private sale had been made. ' It must be intended that these were handed to the umpire. He made his valuation in a writing addressed to the two appraisers. Heading the three papers together it appears that the valuation of the three was on the same basis.
The findings of the court below prevent our considering that the appraisement was entered into by the plaintiff, under the mistake that it was not to be an appraisement under the covenant for renewal.
It is not objected, that the claim made in the answer *150 for a renewal lease of twenty-one years was not the subject of a counter-claim. In order to support the present judgment it is not material to consider the defendant’s position that the action as stated in the complaint will not lie.
It is, however, urged by the learned counsel for the appellants, that the defendant was in default, in two of the covenants of the lease, the one to pay rent and the other to pay taxes. The case shows this default. The bills for the rent had made a mistake as to its amount, stating it quarterly to be $87.50, instead of the right amount of $93.75. It appears that the tenant, in paying the amount charged, did not act dishonestly. The taxes had not been paid. No excuse for this was shown. The counsel does not claim that this default worked a forfeiture of the right to a renewal, under the covenant, but that the defendant “seeking the specific performance of a contract must show that he himself has kept and performed all the conditions precedent to its fulfillment.”
' There is a peculiarity of this case, to be noticed. There was no reply to the answer. Strictly perhaps, and if the commendable practice of the attorneys below had not been followed, the plaintiff could not have used the facts of the default, as they had not been pleaded. It is enough to say that on the pleadings, the plaintiff did not allege the default as a reason that the defendant should not have the benefit of the covenant of renewal, and did not deny the allegation of the answer that the defendant had performed all the covenants on his part by the lease to be performed. The ques.tion then is to be answered upon the facts as they appeared in testimony, and it is, whether to support the judgment in defendant’s behalf it was necessary for the defendant to show that before the action he had performed the covenants or tendered performance of them.
*151 It is not claimed that the default was a cause of forfeiture. The covenant of renewal does not, on its face, make the right to renewal dependent upon the lessee’s having performed his covenants. But if the covenants of both were mutual and dependent, by construction, which it is not necessary to decide, then in an action for specific performance, as the counter-claim here is in substance, it is not necessary to perform or to offer to perform. It is enough, if the decree for the specific performance requires the plaintiff to perform on his part the conditions. It must be kept in mind, that the present is not a case where the obligation to give the renewal has been legally brought to an end by a reentry or a rescission of the lease. The lease and all its covenants have been kept alive. The obligation to renew is alive. There is still time for the defendant to do what is required of him.
In Freeson v. Bissell (63 N. Y. 168), a contract had been made, by which the plaintiff was to sell to defendant certain land for'a certain sum of money. The defendant did not pay the money. The action was brought to declare the unpaid purchase money a lien and .to foreclose the lien. Judge Miller said: “The only question presented ... is whether a tender of a deed of the land by the plaintiff to the defendant, was necessary to enable the plaintiff to maintain the action. The plaintiff had a right to file a bill for the specific performance of the contract without making a tender of a deed before the commencement of the action.” He further said, citing Bruce v. Tilson (25 N. Y. 194), “ It is sufficient, if he offer to perform in the bill of complaint. and is able to perform at the time of the final decree.” He stated another case. “ In Stevenson v. Maxwell, where, in a contract for the sale of lands, the purchase money was to be paid on a particular day and neither party performed or offered to perform on that day, it was held that neither party could maintain an *152 action at law,, upon the contract, and that in such case either party may claim a specific performance in equity, making the offer incumbent upon him. in the bill.” In Bruce v. Tilson, the complaint did not make an offer to' perform, and that was not held fatal as no objection on that ground was made upon the trial. In this case, a like defect in the counter-claim may be disposed of in the same manner and because of the situation of the pleadings that has been described.
On this view, it is -not necessary to advert to the leave given to amend the complaint, so as to conform it to the proof. It was not necessary and it did not injure the plaintiff, as it was enough if the decree should provide for the conditions referred to.
Judgment affirmed, with costs. Order re-opening, case affirmed, without costs.
Freedman and Russell, JJ., concurred.